# SUPREME COURT.

JOHN FITCH agt. GEORGE W. HALL, JOHN H. WARDWELL and JOHN A. BARDWELL.

Although individuals may not be *partners* as between *themselves*, yet as to *third persons* they may be liable as such.

The rule is, that a participation in the profits, when such profits are not specifically fixed as a compensation for services, and paid to a subordinate, under the direction and control of principals, renders all such participants liable to third persons as partners.

In this case it appeared that W. & B., two of the defendants, a mercantile firm in Albany, according to some three years' usage and custom, were in the habit of purchasing produce, hay, flour, feed, lumber, &c., on credit, and sending the same to H. the other defendant, residing in Providence, R. I., to sell on joint account; that is, that after the goods sent were sold, and proceeds received, H. remitted to W. & B. the cost of the goods and one-half the profits, taking the other half himself as his compensation, charging no commission. And W. & B. paid the amount due for the goods, and took the other half of the profits, charging H. no commission.

*Held*, on the purchase and sale of a quantity of hay in pursuance of this custom and usage, where W. & B. had received the cost of the hay from H., but had not paid it over, that H. was liable with W. & B. as a partner, for the price of the hay unpaid.

*New - York General Term, June,* 1858.

DAVIES, SUTHERLAND *and* INGRAHAM, *Justices.*

THIS action was brought by the plaintiff as assignee of A. B. Akin, for the price of a quantity of hay sold by Akin to the defendants. Hall was a merchant and trader, doing business in Providence, R. I., owned vessels, and was wealthy. Wardwell and Bardwell were commission merchants and produce dealers, in Albany, New-York. For three years these two mercantile houses, (the three defendants,) had been and were in the habit of speculating and of purchasing produce, hay, feed, lumber, &c., on credit on joint account. And this hay was purchased in the same way, the purchases made at Albany, the sales in Providence, R. I. The articles so purchased were sent in Hall's vessels to him at Providence; by him sold, the proceeds received, the cost of the articles and one-half of the profits were remitted to Wardwell & Bardwell at Albany. W. & B. paid the amount due for the articles so purchased, and had one-half of the profits, and did not charge Hall any commission. Hall kept the other half of the profits as his share of the profits, charging no commission.

This hay was sold and the proceeds disposed of in the same way. Except the amount for which this action was brought, was not paid over to Akin, as Hall supposed it was.

The testimony as to the purchase of the hay was conflicting. The plaintiff claiming that it was purchased upon the credit of both firms, of all the defendants. The defendant Hall claimed that W. & B. purchased the hay, Hall carried it to Rhode Island, sold it and divided the profits with W. & B. charging no commission. The referee found for the defendant, and held, "that this transaction did not constitute Hall a copartner with W. & B., either as between themselves or as to third persons, and that Hall was not individually or jointly liable with W. & B." for this hay.

Judgment was entered upon the report of the referee, from which the plaintiff appealed.

JOHN FITCH, *attorney and counsel in person.*

*First.* The referee erred in holding that Hall was not a *joint purchaser* of the hay.

1. Bedell and Norris show, that in pursuance of an arrangement with the other defendants, Hall went with Wardwell to Akin *for the purpose* of making a joint purchase.

2. Dunn shows that Hall and Wardwell were there together in treaty with Akin about the hay, and Hall criticising its quality.

3. Akin shows that Hall and Wardwell represented themselves as joining in the proposed purchase.

4. Akin on making the sale, *charged* it to the three defendants.

5. Bedell shows that Wardwell and Hall told Bardwell, on their return from Akin's, *that they had bought the hay.*

6. Norris, Dunn and Akin, show, and Hall does not deny, that Akin *delivered* it to Hall's vessel on the deck, and it was shipped in his name to Providence.

7. Hall admits that as he received it on his *sloop* at Albany, so he sold it from his *vessel's deck* at Providence.

8. The negative evidence of *Hall himself,* not only the defendant upon the record, but the *party in interest,* should not on legal principles be permitted to countervail this accumulation of evidence. (*Mechanics and Farmers' Bank* agt. *Rider,* 5 *How. P. R.* 401.

9. A contract is clearly proved between Akin and Wardwell, Bardwell and Hall. The testimony of Akin clearly shows it; the testimony of Bedell, Norris, the admission of Bardwell, conclusively confirm it. Akin swears he said to them, "Well, gentlemen, what do you say—do you conclude to take the hay?" Wardwell said, "Mr. Akin, come over to-morrow, and we will let you know:" (this was after Hall and Wardwell stepped aside and talked together.) Akin did go over, and asked for Hall; Wardwell told him he had gone home, but that, "we have concluded to take your hay." They took the hay. This constituted a contract. Akin offered to sell the hay at 40 cents per hundred; he asked them at his house, if they had concluded to take the hay, (this was after they had examined it, and Wardwell had introduced Hall to

Akin, as the man who Akin and Wardwell had talked about as the man who wanted to join with Wardwell and Bardwell in the purchase of Akin's hay,) and received for answer, " Come over, and we will let you know." They did let him know—they took it. (6 *Wend.* 103 ; 14 *Barb.* 354, 341.)

10. Hall ratified the contract of Wardwell, and affirmed the joint purchase, by selling the hay and dividing the profits. (16 *Johnson*, 38; 5 *Hill*, 137 ; 4 *Selden R.* 411.)

11. By their acts, they mutually bound each other. Hall was bound by the purchase, and Wardwell and Bardwell by the sale. (2 *Kernan*, 443.)

12. This transaction constituted a particular partnership in the transaction, with all the rights and liabilities incident to partnership. (10 *How. Pr. R.* 509.)

13. *Story on Partnerships*, § 89, says : " Slight circumstances will, it seems, be sufficient to satisfy a jury that a person has held himself out to the world as a partner. An action for money had and received was brought for the purpose of trying whether the plaintiff had been a trader within the meaning of the bankrupt laws. At the trial, it appeared that the plaintiff resided under the roof of Greenwood, his brother-in-law, who had long been a trader. Greenwood persuaded the plaintiff to enter into partnership with him. There was a long negotiation between them, and many conversations with creditors were proved, in which the plaintiff sometimes said he had become a partner with Greenwood. There was no evidence of any express agreement, nor of any interference in the business by the plaintiff, except that he had once gone, in company with Greenwood, to a dyer's, and having inquired about some goods that he had with him to be dyed ; spoke of them as the joint property of himself and Greenwood. It appeared also, that the partnership, if any, only lasted from the 22d of March till the 9th of May. Upon this evidence, the jury found a verdict for the defendant, thereby establishing that the plaintiff was a partner with Greenwood, and therefore liable to the bankrupt laws ; and the court of common pleas held the verdict to be right."

Fitch agt. Hall and others.

*Second.* The referee erred in holding that Hall was not liable as a *partner* with the other defendants in the purchase.

1. The terms of the partnership as admitted by Hall at the time to Mr. Viele, were, that the other defendants made the *purchases*, he made the *sales*, and the three divided the *profits*.

2. This is entirely distinguishable from the cases of clerks and others, receiving as compensation a *sum equal* to a given share of the profits. It was not contended on the trial of the cause before the referee, that this was a mode of compensating Hall for any services. Hall was the capitalist; Wardwell and Bardwell were poor. (*Hodgman* agt. *Smith*, 13 *Barbour*, 302 ; *Smith* agt. *Wright*, 1 *Abbott's Pr. R.* 243, 245, 247, *in court of appeals.*)

3. This is one of that class of cases in which parties have sought to take the *benefits* without the *hazards* of partnership— but are charged as partners, being entitled to a *share* of the profits as *profits.*[1]    (*Dob* agt. *Halsey*, 16 *Johnson*, 31, 40 ;

[1] SPENCER, Justice. "Now it is a very clear proposition, that he who is to take a part of the profits indefinitely, shall, by operation of law, be made liable to losses—upon the principle that by taking part of the profits, he takes from the *creditors* a part of the *fund* which is the security for the payment of their debts."

The following list of authorities, both English and American, many of them having been cited by the plaintiff on the argument, have been compiled, and are given as a reference on the question of partnership, for the benefit of the profession: *Grace* agt. *Smith*, 2 *W. Blackstone*, 998; *Waugh* agt. *Carver*, 2 *H. Blackstone*, 235; *Hodgman* agt. *Smith*, 13 *Barbour*, 303; *Smith* agt. *Wright*, 1 *Abbott's P. R.* 243; *Dob* agt. *Halsey*, 16 *Johnson*, 31, 40; *Cheap* agt. *Cramond*, 4 *Barnwell & Ald.* 663; *Cushman* agt. *Bailey*, 1 *Hill*, 526; *Moss* agt. *The Rossie Lead Mining Co.*, 5 *Hill*, 137; *Foot* agt. *Sabine*, 19 *John.* 154; *Butler* agt. *Stocking*, 4 *Seld.* 408; *Mabbett* agt. *White*, 2 *Kernan*, 443; *Lewin, Survivor, &c.* agt. *Stewart et al.*, 10 *Howard P. R.* 509; *Story on Partnership*, § 89; *Reed* agt. *Hollingshead*, 10 *Eng. Com. Law*, 460; *Brown* agt. *Cook*, 3 *New-Hampshire*, 64; *Musier* agt. *Trumpbour*, 5 *Wend.* 274; *Bovill* agt. *Hammond*, 13 *Eng. Com. Law*, 126; *Bond* agt. *Pittard*, 3 *Mee. & Welsby*, 357; *Vassars* agt. *Camps*, 14 *Barbour*, 341; *Law* agt. *Ford*, 2 *Paige*, 310; *Adams' Doctrine of Equity*, pages 241, 243; *Story's Equity Jurisprudence*, §§ 672, 673; *Story on Partnership*, 228, 229; *Egberts* agt. *Wood*, 5 *Paige*, 517, 525; *Hitchcock* agt. *St. John*, 1 *Hoff. R.* 501; *Martin* agt. *Van Schaick*, 4 *Paige*, 479; *Wetter* agt. *Schlieper*, 15 *How. P. R.* 268; *Watson on Partnership*, 40; *Post* agt. *Kimberly*, 9 *Johnson*, 496; *Holmes* agt. *The United*

*Cheap* agt. *Cramond,* 4 *Barnwell & Ald.* 663, 669; *Waugh* agt. *Carver,* 2 *H. Blackstone,* 235; *Cushman* agt. *Bailey,* 1 *Hill,* 526.)

4. Here Hall swore that he sold the "goods *on joint account,*" which brings him within the rule by all cases. (*Reed* agt. *Hollinshead,* 10 *Eng. Com. Law,* 460; *Brown* agt. *Cook,* 3 *New-Hampshire,* 64; *Musier* agt. *Trumpbour,* 5 *Wend.* 274; *Bovill* agt. *Hammond,* 13 *Eng. Com. Law,* 126.)

5. Hall, by his own testimony, shows that he had a right to control the property; that he exercised the right, and did control the sale of the hay. By law, he could compel an accounting as between Wardwell, Bardwell and himself. This was not disputed on the trial. (*Ogden* agt. *Astor,* 4 *Sand. Sup. Ct. R.* pages 311, 322 *of that case; Collier on Partnerships,* §§ 25, 45, *and notes 3d. Am. ed.; and see Revised Statutes on same subject.*)

6. With respect to third persons, an actual partnership is considered by the law to subsist wherever there is a participation in the profits, even though the participant may have most expressly stipulated against the usual incidents to that transaction. (*Bond* agt. *Pittard,* 3 *Mee. & W.* 357.)

*Ins. Company,* 2 *Johnson's Cases,* 331; *Livingston* agt. *Roosevelt,* 4 *Johnson,* 265; *Cumpston* agt. *McNair,* 1 *Wend.* 457; *Watson on Partnership,* 74; 6 *Vesey,* 580, 600; *Peacock* agt. *Peacock,* 2 *Camp.* 45; *Guidon* agt. *Robson,* 2 *Camp.* 302; *Story on Partnership,* §§ 59, 61, 89; 4 *East,* 144, 147; *Hesketh* agt. *Blanchard,* 54 *Com. Law,* 640; *Everett* agt. *Coe,* 5 *Denio,* 180; *Bostwick* agt. *Champion,* 18 *Wend.* 175; *Green* agt. *Beesley,* 2 *Bing. N. C.* 108; *Pattison* agt. *Blanchard,* 6 *Barbour,* 539; *Id.,* 1 *Selden,* 186; *Froment* agt. *Coupland,* 2 *Bing.* 170; *Chase* agt. *Barrett,* 4 *Paige,* 148, 159; *Garfield* agt. *Hatmaker, Smith's Court of Appeals Rep. Vol. I,* page 475; *Buckingham* agt. *Burgess,* 2 *McLean,* 364; *Parker* agt. *Barker,* 3 *Moore,* 226; *Collier on Partnership,* § 89; *Dezell* agt. *Odell,* 3 *Hill,* 215; *The Welland Canal Company* agt. *Hathaway,* 8 *Wend.* 480; *Wright* agt. *Hooker, Selden's Notes; Everett* agt. *Chapman,* 6 *Conn.* 347; *Hoare* agt. *Dawes, Doug. Rep.* 371; *Gouthwaite* agt. *Duckworth,* 12 *East,* 421; *Pott* agt. *Eyton, T. Term,* 1846, 54 *Eng. Com. Law Rep.* 32; 1 *Smith's Leading Cases,* 726; *Barry* agt. *Nesham,* 3 *Manning, Granger & Scott,* 641; *Ex parte Hamper,* 17 *Ves.* 403; *Ex parte Langdale,* 18 *Ves.* 300; *Ex parte Wartson,* 19 *Ves.* 459; *Myres* agt. *Sharp,* 5 *Taunton,* 74; *Smith* agt. *Watson & Locke,* 2 *B. & C.* 401; *Chuck, Ex parte,* 8 *Bing.* 469; *Leberkam* agt. *Smith,* 1 *Esp. N. P. Cases,* 29.

Fitch agt. Hall and others.

7. That the sharing in the profits and loss, with a right to use the property and an inchoate title to a portion thereof, constituted a full partnership between the parties. (*Vassars* agt. *Camps*, 14 *Barbour*, 341.)

*Third.* In any view, Hall is to be deemed a partner, so far as the rights of third persons are concerned. (16 *Johnson*, 34, 40; 1 *Wend.* 463.)

1. This was so held, where the contingent profits of an adventure were to be divided by way of *compensation*, even when it was conceded that there was no partnership *as between the parties.* (*Story on Partnership*, 59, 61, 89; *Hesketh* agt. *Blanchard*, 4 *East*, 144, 147; 54 *Com. Law*, 640; 13 *Barb.* 302; 18 *Wend.* 185; 1 *Hill*, 526; 1 *Selden*, 191.)

2. So held, where the proprietors of a cotton mill agreed, as a *compensation for money loaned*, to pay the lender a share of the profits to the amount of a penny a yard. (*Everett* agt. *Coe*, 5 *Denio*, 180.)

3. The rule is stated with precision by the court of appeals: " The error into which the courts below have fallen, is in confounding a community of interest in *the property* out of which the profits are to arise, with a community of interest in *the profits themselves.* The latter is all that has ever been considered necessary to create a partnership *as against third persons.* (*Smith* agt. *Wright*, 1 *Abbott's Pr. R.* 247.)

4. The chancellor states as the *principle* upon which the rule is founded, " that he who contracts for and relies upon a part of *the profits* of the business as a compensation for his *services*, or for the use of his *capital*, is in natural justice *bound to pay the creditors*, who have, upon the ordinary terms of credit, furnished the merchandise or other means out of which those profits were to arise, or by which they might be increased for his benefit. (*Chase* agt. *Barrett*, 4 *Paige*, 159; *Grace* agt. *Smith*, 2 *Blackstone*, 998.)

It is not possible to express in terms more in accordance with the decisions and language of the decisions of the court, in *Waugh* agt. *Carver*, and in *Smith* agt. *Wright*, (court of appeals, 1 *Abbott*, 243,) and *Wright* agt. *Hooker*, (court of appeals,)

an express agreement to participate in the profits of the hay trade on joint account, and to establish a joint concern between them, than is sworn to by Hall himself at folio 154, where Hall swears he sold the produce on joint account, and took half of the profits.

The rule is settled, that "where a party, either by his act, declaration or conduct, has induced a person to act in a particular manner, he will not afterwards be permitted to deny the truth of the admission, if the consequences would be to work an injury to such person or one claiming under him. (3 *Hill*, 216, Per BRONSON, *J.* ; 8 *Wend.* 480.)

The defendant gave the plaintiff's account book in evidence, and produced the plaintiff's account book. He made it presumptive evidence in plaintiff's favor, and is bound by it. The charge was to Wardwell, Bardwell & Co. (15 *Johnson*, 409, 420; 5 *Taunt.* 245; 3 *Hill*, 74; 1 *Cowen & Hill*, 227, 228 *and* 229.)

*Fourth.* The defendant *held out to the plaintiff*, as well by his declarations as his acts, that he was jointly interested—and these facts being undisputed, he should be held jointly liable. Akin believed and supposed he was dealing with Hall, and Hall acted and talked in such a way, that Akin supposed so, and is estopped from denying his purchase of the hay of Akin. (*Buckingham* agt. *Burgess*, 2 *McLean*, 364; *Parker* agt. *Barker*, 3 *Moore*, 226; *Story on Partnership*, 59, 61, § 64; *Col. on P.* § 89; 2 *H. Blackstone*, 246, *Lord Ch. J.* EYRE; 3 *Hill*, 212; 8 *Wend.* 480.)

The defendant Wardwell, being a joint contractor, was an incompetent witness for Hall, and especially without the execution or delivery of any release or indemnity; and as his testimony related only to matters affecting the joint liability of the defendants, the motion to strike it out should have been granted. (*Code*, § 397; *Beal* agt. *Finch*, 1 *Kernan*, 133; 14 *Barbour*, 341.)

The testimony of John H. Wardwell cannot be received or have any weight in the case. Wardwell says, Hall was not jointly interested in the purchase of Akin's hay. The plaintiff

admitted that Wardwell would so swear, (see admission in the case.)

The superior court, in 1 *Sandford*, (*p.* 687,) say that the testimony of a witness, admitted by the opposite party, must be admitted to be as it is given, not that he will swear that the testimony is as it is claimed by the party offering it. Under this rule, Wardwell's testimony cannot be received.

The admissions of one partner are evidence in an action against the firm, although a *nolle prosequi* has been entered against him. *Boyce* agt. *Watson, J. J. Marsh.* 498 ; *Cady* agt. *Sheppard*, 11 *Pickering*, 400; *Odvine* agt. *Maxcy*, 15 *Mass.* 39 ; *Fish* agt. *Copeland*, 1 *Overt.* 383; *Snead* agt. *Kelly*, 3 *Dana*, 538 ; *Wood* agt. *Cornell*, 2 *Wharton*, 543; *Hutchins* agt. *Childress*, 4 *Stewart Part.* 434.)

In an action against partners, if only one has been served with process, evidence may be given by the plaintiff of the declarations of those not served. (*McCoy* agt. *Lightner*, 2 *Watts*, 347 ; *Taylor* agt. *Hendrickson*, 17 *Serg. & Rawl.* 453.)

The admissions of the defendant, John A. Bardwell, as given in evidence in this case, is conclusive and is binding, and binds the defendant Hall. The above authorities clearly sustain it.

HENRY G. WHEATON, *counsel for defendant Hall.*

*First.* A full statement of the case is contained in the opinion of the referee, commencing at folio 170, by which it appears that the only question in the case was, whether the defendant Hall, who alone defended the suit, was jointly concerned with the other defendants in the purchase of a quantity of hay, for the price of which, the suit was brought.

The referee decides, as a question of fact, that the sale was not made to the defendant, but was made to the defendants Wardwell and Bardwell, who were partners in business, in Albany.

The referee also decides, as a question of law, that the facts proved, did not constitute the defendants partners in the purchase of the hay, so as to make the defendant Hall, liable for

the purchase money. (*Vanderburgh* agt. *Hull*, 20 *Wend.* 70; *Denny* agt. *Culbat*, 6 *Met.* 82; *Loomus* agt. *Marshall*, 12 *Conn.* 69; *Champeau* agt. *Bostwick*, 18 *Wend.* 175, 184 and 185; *Burkle* agt. *Hart*, 1 *Denio*, 337; *Murphy* agt. *Whitney*, 10 *John. Rep.* 226.)

The defendants Wardwell and Bardwell were partners doing business in the city of Albany, in the purchase and sale of produce. The defendant Hall, lived in Providence, Rhode Island, and as appears, was a commission merchant there. (*See testimony of Akin, folio* 26, *and Hall, folio* 156.)

*Second.* There is no pretence that Hall had anything to do personally with the purchase of the hay; the whole question is, whether the facts clearly found make him liable as a partner of Wardwell & Bardwell in the purchase of the hay? The only facts proved, bearing upon that question, are that Wardwell & Bardwell purchased the hay, and sent it to Hall at his place of business in Providence, to be sold, and to compensate him for his services, he was to have a portion of the profits arising from the adventure.

Hall was a mere agent to sell, and had no interest in the hay till the sale was made, and then his interest accrued in the proceeds of the sale.

Hall swears positively he had no interest in the purchase.

*Third.* The testimony of Wardwell was properly admitted.

1. The testimony he gave was against his interest, it being for his interest to have Hall bound to pay his part of the debt. His testimony went merely to discharge Hall, leaving himself bound for the debt. (*Beal* agt. *Finch*, 1 *Kernan*, 128; *Lefever* agt. *Brigham*, 10 *How.* 385; 9 *How.* 390.)

By the court—DAVIES, Justice. The plaintiff in this action seeks to charge the defendant Hall, as partner with defendants Wardwell & Bardwell, in a sale of hay, made by one Akin, and whose claim has been assigned to plaintiff.

The referee has found as a question of fact, that the purchase originally was made by the defendants Wardwell &

Bardwell, and that Hall was not a party to this purchase, although there is some evidence authorizing a different conclusion; there is, we think, evidence sufficient to sustain the finding of the referee on this point. We do not think it necessary, therefore, to interfere with the conclusion on this question, to which he has arrived.

The question of law submitted for our consideration, we think, was clearly and well stated, by the counsel for the defendant Hall, and is, did Hall, under the arrangement to sell the hay on joint account and divide the profits with Wardwell & Bardwell, constitute himself a partner so far as the plaintiff or his assignee is concerned?

It is quite true, as between the defendants themselves, they were not partners. But it has long been settled, that although they might not be partners as between themselves, yet as to third persons, they might be liable as such. The rule is, that a participation in the profits, when such profits are not specifically fixed as a compensation for services, and paid to a subordinate, under the direction and control of principals, renders all such participants liable to third persons as partners. The case of *Waugh* agt. *Carver*, (2 *H. Black.* 235,) decided on the authority of *Grace* agt. *Smith*, (2 *W. Black.* 998,) fully sustains this position.

By an agreement entered into between the defendants, Carver and Carver & Geisler, it was arranged between them, that they should respectively share in the profits of each other's business, in certain proportions, and it was also provided, that each should bear his own losses, and not be responsible for the defaults and losses of the other. The counsel for the plaintiff in that case, cited several authorities, which certainly sustain the position that a participation of profits is sufficient to constitute a partnership.

Chief Justice EYRE, in delivering the opinion of the court, says that it is plain upon the construction of the agreement, if it be construed only between the Carvers and Geisler, that they were not and never meant to be partners. They meant each house to carry on trade without risk of each other, and to be

at their own losses. And on the authority of *Grace* agt. *Smith*, (*supra*,) he holds that he who takes a moiety of all the profits, shall by operation of law be made liable to losses, if losses arise, upon the principle that by taking part of the profits, he takes from the creditors a part of that fund which is the proper sesurity to them for the payment of their debts ; and he adds : " for though with respect to each other, these persons were not to be considered as partners, yet they have made themselves such with regard to their transactions with the rest of the world."

The superior court in *Smith* agt. *Wright*, (5 *Sand.* 113,) held in a case where two mercantile firms agree to share profits and loss upon contracts for the purchase or sale of merchandise,. to be made by each firm in its own name, and to be executed with its separate funds, they are not liable as copartners either as between themselves or to third persons. In that case, the arrangement between the parties was very like that, as testified to by defendant Hall, existed between him and defendants Wardwell and Bardwell. But the court of appeals reversed that judgment and held that the defendants though as between themselves were not copartners, the arrangement made between them to share the profits, constitutes them partners as to third persons. (1 *Abbott's Pr. Rep.* 243.)

EDWARDS Justice, in delivering the opinion of the court, says, " all interest which is necessary to constitute a partner-ship, is an interest in the profits, and such an interest necessa-rily constitutes a partnership, unless, as has been stated, the interest in the profits is given as a compensation for services." The learned judge refers with approbation to the case of *Everett* agt. *Chapman*, (6 *Conn. Rep.* 347,) where the parties had agreed that each one should purchase hides on his own credit, and should manufacture and sell the portion so manu-factured by him, each party to participate in the profits. It was held that all the parties were liable as copartners to a third person, who sold hides to one of the parties in ignorance of the partnership, and charged the same to him.

The reasoning of the learned Judge DAGGETT, in the case

last cited, and the authorities cited by him, seem to me conclusively to dispose of this case.

The judgment entered on the report of the referee must be reversed, and a new trial ordered, with costs to abide the event, and the case may be referred to a referee residing in the city of New-York.