# New York Marine Court.

*Trial Term—March,* 1882.

## ADOLPH DEMUTH ET AL. *against* FRIEDMAN STERNHEIMER AND LOUIS SANDERS.

Persons not partners *inter se* may be holden as partners by third persons, where they have, by their acts and doings, led third persons to credit them as partners.

Motion for a new trial upon the minutes, the jury having found a verdict against both defendants.

McADAM, J.—That the defendants were not partners *inter se*, must be taken as conceded ; and they are not jointly liable, unless by their acts and conduct they have led the plaintiffs to give them credit on the supposition that they were.

That Sternheimer is liable is not disputed, and whether Sanders was properly associated with him in the liability is the question presented by the present motion, and this must be determined from the evidence.

The jury having found for the plaintiffs, I must accept the facts testified to by them as true, and decide from them the point in question. Adolph Demuth, one of the plaintiffs, testified that when Sternheimer came to order the goods, he had the following conversation: "I told him (Sternheimer) that before I undertook an order of that kind, I must first see who was going to pay for the goods, that I did not consider him good for any article. He said, My partner is good enough. I said to him, Who is your partner ? He said Louis Sanders, and that he was good enough and would pay the bills every Saturday." The same witness, in different parts of his testimony, swears to these ad-

Demuth *v.* Sternheimer.

ditional circumstances : that Sanders called upon him a number at times and said, "Ship my goods, hurry up my goods," and that Sanders and Sternheimer came together, and said, "hurry up the goods." Sanders gave his individual checks for the "goods" and spoke of them as his own, giving frequent orders concerning them. Sanders sent a written order to have certain goods renewed, and receipted a bill made out to "Sternheimer & Co.," in that name with his initials added.

Sternheimer & Sanders occupied the same place of business, and in doing business Sternheimer used the firm name of "Sternheimer & Co.," although he testifies that no one represented the "Co."

The use of the words "& Co." was a clear violation of the statute (*L.* 1833, ch. 281), unless it represented a real partner. This law is supposed to have been known to all the parties to the record. *Ignoratia juris non excusat.* Sanders shared half of the profits on all sales, and Sternheimer the other. Sanders paid all the losses. Sanders swears that he told the plaintiffs that if they were afraid of Sternheimer, to send in their bill every Saturday, and he would pay it. This was certainly a very encouraging indorsement of Sternheimer, and a pretty strong assurance that there would be no trouble in meeting bills as they matured. The jury upon this evidence found for the plaintiffs, and I am called upon by the defendants to hold that their finding is so manifestly contrary to the evidence that it ought to be set aside. I cannot conscientiously say this. The facts disclosed under the authorities make the defendants partners as to third persons (McStea *v.* Matthews, 3 *Daly*, 349 ; Conklin *v.* Barton, 43 *Barb.* 435 ; Burns *v.* Rowland, 40 *Id.* 368). The dispute as to the correct amount of the bill was one peculiarly of fact upon which the finding of the jury is conclusive.

Upon the entire case, the motion for a new trial must be denied. No costs.

Demuth *v.* Sternheimer.

No appeal was taken. The following opinion upon a similar question was delivered by the marine court, general term, January, 1878, in the case of ALFRED S. SEER, plaintiff, appellant, against GEORGE HOFFMAN, impleaded, &c., defendant and respondent.

MCADAM, P. J.—Although the agreement of May 14, 1873, may not have made the defendants partners *inter sese*, because it expressly provides that no such construction shall be put upon the relation formed between them, yet declaring in this mode, that one is not a partner, will not relieve him from liability as such, to third persons, if in fact he be a partner (*Parsons on Partnership*, 87).

Parties entering into the partnership relation are expected to join together their money, goods, labor or skill for the purposes of trade. One partner may therefore bring into the trade money, another goods, and a third labor or skill, and they will thenceforth be partners, even as between themselves, provided they share proportionally the profit and loss of the concern. In Peacock *v.* Peacock (16 *Ves.* 49) a father took his son into business with him as a partner, and it was agreed that the son should be entitled to a moiety of the profits, although he contributed neither money nor effects, but only his personal labor. There was no question as to this being a partnership between the parties, and that the son might file a bill against the father, praying for dissolution, an account of profits, and a receiver of the outstanding estate; and, in a subsequent case, it was held that where, by agreement, persons have a joint interest of the same nature in a particular adventure they are partners *inter se*, although some may contribute money, and others labor. " Such a partnership," observed ABBOTT, Ch. J., " may well exist, although the whole price is, in the first instance, advanced by one party, the other contributing his time and skill, and security in the selection and purchase of the commodities " (*Collyer on Partnership*, Perkins' Ed. § 16, and cases cited). It appears from the agreement that the defendants George Hoffman and Thomas Thacher were the lessees of the Lyceum Theater, and that the defendants Mansell and O. Curtis Hoffman were desirous of obtaining the use of it, for one year from August 1, 1873, for a first-class theater. That the said lessees not only consented to give the two last-named defendants the use of the theater, but were willing to advance a sum of money not exceeding $12,000, to aid them in running it. The agreement then declares the rights and duties of the respective parties.

The agreement also contains the two following provisions, which are of importance in determining the true character of the relation formed between the parties. The first provision is in these words: " And it is further agreed that out of the *net* earnings of said theater, the parties hereto of the second part shall be first reimbursed for such moneys advanced as aforesaid, together with the legal interest there-

on, from the date of such advances, and that after the payment of such advances as aforesaid, and the rental of said theatre, to wit: $25,000, per annum, *the balance remaining of such net earnings shall be divided as follows*, one-half thereof to the parties of the first part and the other half to the parties of the second part, share and share alike, *and such net profits, to be divided as aforesaid*, shall be in lieu of all salary, or perquisites to either of the parties of the first part."

Learned elemetary writers upon the subject, tell us that such a participation in the *net profits* as such, of a joint enterprise, makes those so participating partners as to third persons (*Story on Partnership*, §§ 33, 34; *Parsons on Partnership*, 88).

The test of partnership they say is a community of profit, a specific interest in the profits, as profits, in contradistinction to a stipulated portion of the profits as a compensation for services (See cases collated in note b, 3 *Kent. Comm.* 12 ed. marg. p. 25). That to be a partner, one must have such an interest in the profits as will entitle him to an account (*Ib.*). The second of the two provisions before referred to gives the right to an account in these words: " And it is further understood and agreed that the parties hereto of the second part, shall have full and uninterrupted authority to examine all the books, bank accounts and business, connected with said theater, and the running thereof, and advise and direct such action in connection therewith as in their judgment shall be for the best interest of all concerned, and that none of the earnings of said theater shall be expended without the consent of the parties of the second part hereto, *and that the whole management and conduct of said theater shall be such as shall be for the best interests of all the parties to this agreement.*"

There can be but little doubt, therefore, that the defendants became partners as to third persons in respect to all bills properly contracted in running the theater, of which the plaintiff's bill, which was for painting, seems to be one (For illustrations and examples, see Waugh *v.* Carver, 2 *H. Blackstone*, 260; *Ex parte* Harper, 17 *Ves.* 412; Barry *v.* Nesham, 3 *Mann. G. & S.* 657; Cheap *v.* Cramond, 4 *Barn. & Ald.* 667; Dob *v.* Halsey, 16 *Johns.* 40; Cushman *v.* Bailey, 1 *Hill,* 526; Hodgman *v.* Smith, 13 *Barb.* 304; Catskill Bank *v.* Gray, 14 *Barb.* 477; Champion *v.* Bostwick, 18 *Wend.* 175; 11 *Id.* 571; Fitch *v.* Hall, 16 *How. Pr.* 185; Churchman *v.* Smith, 6 *Whart.* 149; Purviance *v.* McClintle, 6 *Serg. & R.* 259; Snuffley *v.* Howard, 7 *Dana,* 368; Craig *v.* Alvison, 4 *J. J. Marsh.* 612; Scott *v.* Colmesnill, 7 *Id.* 423; Whitney *v.* Luddington, 17 *Wis.* 741; Wright *v.* Davidson, 13 *Minn.* 449; Edwards *v.* Tracy, 62 *Penn.* 381; 114 *Mass.* 114).

The only other point in the case is as to the effect of making out a bill in the name of Chamberlain, the manager of the theater, for the claim in suit. This did not necessarily relieve the defendants from

liability if they were the real debtors.   It created at most a question of fact for the jury as to whether the credit was given to him (Chamberlain) personally, or whether the making out the bill to him was not a mere mistake of fact owing to the plaintiff's ignorance at the time that the defendants were the real debtors (*Story on Agency*, § 279; Meeker *v.* Claghorn, 44 *N. Y.* 349; 42 *N. Y. Sup. Ct.* 91; 2 *Hall*, 474; 1 *Bosw.* 417; 1 *Hilt.* 58; 68 *N. Y.* 400; 4 *Hun*, 432).   The suit against Chamberlain was confirmatory evidence bearing upon the same subject.   It was discontinued before the trial of this action, and was not conclusive against the plaintiff.

It follows, therefore, that the justice below erred in dismissing the plaintiff's complaint, and that he ought to have sent the case to the jury, on the question of to whom the credit for the work sued for was given, and should have held as matter of law that the defendants were partners as to third persons.

The judgment must therefore be reversed and a new trial ordered, with costs to abide the event.

SINNOTT and SHERIDAN, JJ., concurred.

This decision was affirmed on appeal by the common pleas general term.